**DYNA–DRILL, Division of Smith International, Inc., Appellant (Objector-Defendant),**

v.

**Albert Dana WALLINGFORD, Appellee (Claimant).**

**No. 5169.**

Supreme Court of Wyoming.

Feb. 4, 1980.

R. R. Bostwick of Murane & Bostwick, Casper, for appellant.

Harry E. Leimback, Casper, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

This is an appeal in a worker's compensation matter. Appellant-employer contends that it should have received notice of a contemplated change in the physician attending appellee-employee, and that it should have had an opportunity to object to the change prior to the district court's authorization of the change. It objects further to the payment of the claims for medical, hospital and related services resulting from the change. This appeal is from the district court order, made after a hearing, to pay the claims.

We will affirm that order insofar as it applies to the contested claims, except for the claim of Dr. Glen L. Loveday, Jr.; the claim of Dr. Charles F. McMahon; the claim of Hot Springs County Memorial Hospital; the claim of Natrona County Memorial Hospital, dated October 13, 1978 for $361.00; the claim of Casper Radiology Group, i. e. Dr. Ronald R. Lund, dated October 16, 1978 for $16.00; and the claims of appellee dated December 4, 1978, December 6, 1978 and May 14, 1979 for drug expenses of $13.95, $37.50 and $166.53, respectively. As to these claims, the order will be reversed and the case remanded with direction to disapprove them as not proper for payment with worker's compensation funds.

While in the employ of appellant, appellee was injured in the state of Utah on July 28, 1977. He was immediately hospitalized in Utah and then received medical, hospital and related services in Casper. Appellant did not disapprove of payment of claims for these services. Nor does it contest the fact that the injury was job related.

Inasmuch as one of the pertinent findings of the district court relates to the need for a change in physician and for additional services, we briefly note that the record reflects the following services in Utah and Casper:

Hospitalization in a Utah hospital.

Attending physician Dr. Joseph F. Decker, Logan, Utah; consultation with Dr. Ronald J. Payne of Budge Clinic, and radiology by Dr. John W. Emmett.

Hospitalization in Memorial Hospital of Natrona County. Appellee received services on several occasions, including outpatient, therapy, x-rays, emergency room and surgery.

Attending physician Dr. Albert V. Metz of Wyoming Neurosurgical Associates, assisted by Dr. Philip D. Gordy of Wyoming Neurosurgical Associates, and neurological consultation with Dr. Malvin Cole of Wyoming EEG Laboratory, and anesthetic by Dr. Harold S. Cavanah, and emergency room reception by resident Dr. R. Schure and Dr. Roy W. Holmes who continued consultation, and Casper Radiology Group, i. e. Dr. Ronald R. Lund with Dr. Jack A. Larimer.

Miscellaneous pharmacy claims for drugs.

Appellant contends that communication with the attending physician and with Dr. Holmes was not satisfactory, that they would not administer further to his complaints, and that they would not refer him to another physician. Dr. Loveday's name was given to appellee by a sister-in-law, and Dr. Loveday made an appointment for appellee with Dr. Fred W. Schoonmaker, a Denver, Colorado, physician specializing in cardiology.[1] Dr. Loveday lives and practices medicine in Thermopolis.

On March 29, 1978, appellee, acting through his wife, made application to the trial court for permission to change physicians. The court issued an order authorizing appellee to "[e]ngage exclusively the professional services of Dr. Fred Schoonmaker, St. Luke's Hospital, Denver, Colorado." Appellee went to Denver immediately and received medical services in Denver from Dr. Schoonmaker, at St. Luke's Hospital, with Dr. Ian M. Happer of St. Luke's in consultation, and Denver Radiological Group. Worker's compensation claims were submitted by these four claimants and were objected to by appellant.

On April 2, 1978, Dr. Schoonmaker made the results of his examination available to Dr. Loveday and advised in the cover letter that he was referring the "patient" to Dr. Loveday "for future medical attention."

Dr. Loveday then performed medical services for appellee, and he referred appellee to Dr. McMahon, to the Hot Springs County Memorial Hospital, to Natrona County Memorial Hospital, and to the Casper Radiology Group for medical and hospital services. Appellant also objected to the worker's compensation claims submitted by these five claimants.

■ In support of its contention that it should have received notice of change in physician together with an opportunity to object thereto, appellant points to § 27–12–401(b), W.S.1977, which reads:

"(b) No fee for medical attention or hospital care under this section shall be al-

lowed without notice to the employer and a hearing if requested by the employer. If no written objection to the payment of the claim is filed within ten (10) days from the date of notice to the employer, it is conclusively presumed that the employer consents to the claim and the claim may be approved by the clerk of court. If after a diligent effort has been made the notice cannot be served upon an employer, the clerk of court may allow or disallow the claims."

The statute requires notice to the employer with an opportunity for a hearing before a claim is *allowed for payment,* but it does not make a similar provision with reference to a change in physician. The wording of statutory provisions in other states may require a different conclusion. In other states, the employee must submit to examination by the employer's physician, or by the physician of the worker's compensation department. Some states require the employer to furnish the medical treatment. See 2 Larson, Workmen's Compensation Law, § 61.12 (1976). Our Worker's Compensation Act is peculiar to our state. The Act requires the physician or hospital to give notice of acceptance of the case, but the choice of physician or hospital, at least initially, is that of the employee.

Accordingly, we reject appellant's contention that § 27–12–401(b) requires notice to the employer of a change in attending physician with an opportunity to object thereto.

■ We agree that the statute does require notice to the employer before payment for medical attention or hospital services can be made. Appellant received notices of such services in this instance, and appellant objected to payment of some of the claims. A hearing was held in connection therewith. The trial court found in its final order:

"2. That the Casper physicians were in no way wrong in their diagnsis [sic], nor in their handling of the claimant and his

---

1. This speciality is indicated in the record only by the nature of the services rendered, i. e., bilateral coronary studies, and by designation under his signature on the cover letter of April 2, 1978, of "Director Cardiovascular Services."

ailments on any technical basis, however, the Court finds that there was some need for the claimant to consult different physicians and that he received tangible benefits from doing so."

Such findings are presumptively correct on appeal and should not be set aside unless clearly erroneous or contrary to the great weight of the evidence. *Whitefoot v. Hanover Insurance Company*, Wyo., 561 P.2d 717, 720 (1977); *Diamond Management Corporation v. Empire Gas Corporation*, Wyo., 594 P.2d 964, 966 (1979); *Olson v. Federal American Partners*, Wyo., 567 P.2d 710, 714 (1977); *Williams v. Northern Development Co.*, Wyo., 425 P.2d 594, 595 (1967). A review of the record reflects substantial evidence to support the findings of a need to consult other physicians and of tangible benefits resulting therefrom. Appellee's relationship and communications with the Casper physicians lacked some cordiality and candor. He could not obtain information from Dr. Cole relative to results of some tests. He had not obtained relief from some pains in his head, chest and arms. Although the diagnoses from the physicians, before and after the change in physicians, may have been the same, and although the passage of time or something other than physical improvement may have occasioned it, appellee felt better after the change, and he did return to work on November 17, 1978.

■ Finally, we note that in his petition to the court to change physicians to Dr. Schoonmaker (which permission was granted), appellee relied upon the rules and regulations of the Worker's Compensation Department and, thus, acknowledged their applicability. In such petition, he stated:

"I hold myself subject to the rule that: 'While under treatment, I may not change from one hospital to another, or from one physician to another, without first securing written permission from the said District Court, unless I pay for such services myself; and that, if I wish

to leave the jurisdiction of this Court or the State of Wyoming, I must secure written permission from the Court before doing so; otherwise, any bills incurred by me must be paid by me and are not covered under Wyoming Worker's Compensation.' "

Accordingly, appellee is bound by the circumscription placed on the order by such rules and regulations inasmuch as the order issued out of a petition which was itself conditioned upon the rules and regulations.

■ Therefore, we must apply to the facts of this case the rules and regulations adopted by the Director of the Worker's Compensation Department pursuant to § 27–12–802, W.S.1977, for administration of the Worker's Compensation Act[2] in order to determine whether or not payment of the contested claims is proper as a matter of law. The pertinent portions of such rules and regulations read:

"Chapter I

\*     \*     \*     \*     \*     \*

"Section 2.  \*  \*  \*

"c. Every employee who shall suffer from an injury arising out of his employment shall have the right to select, if available, a Wyoming physician of his own choice (see also 2. h.) to render initial treatment. Provided that at any time the Director shall deem it advisable to transfer an injured worker to some other physician or specialist or place of treatment, the right to do so is reserved by the Director.

\*     \*     \*     \*     \*     \*

"h. An injured employee, while under treatment, shall not be permitted to change from one physician to another without his fully setting forth his reasons for so doing, and without the consent of the District Court, unless he expects to pay incidental costs himself, except the physician in charge of the case is herewith authorized to call a specialist or send

---

**2.** Administration of the act requires some record and control over the identity of persons and organizations performing services for the em-

ployee. Rules and regulations adopted to that end have the effect of law. See 2 Am.Jur.2d Administrative Law § 295 (1962).

the injured worker to the specialist as soon as the physical condition of the worker will permit. No consent of court or hearing will be required in such cases. Physicians should inform patient who contemplates leaving the State before full recovery that he must secure permission from the court wherein the case is filed before doing so, otherwise he will jeopardize his right to have the Industrial Accident Fund pay for his out of State medical and/or hospital care.

\* \* \* \* \* \*

"Chapter IV

\* \* \* \* \* \*

"Section 2. \* \* \*

"e. An injured employee, while a patient shall not be permitted to change from one hospital to another without his fully setting forth the reasons for so doing, and obtaining the consent of the District Court, unless he expects to pay expenses incurred after such change."

▮ The required consent of the district court for the change to "Dr. Fred Schoonmaker, St. Luke's Hospital, Denver, Colorado" was obtained. The consent recited that the authorization was "exclusively" for the services of Dr. Schoonmaker. However, the order also had a reference to St. Luke's Hospital, and section 2. h. of the quoted rules and regulations authorized the attending physician "to call a specialist." Accordingly, the services of Dr. Schoonmaker, of St. Luke's Hospital, of Denver Radiological Group, and of Dr. Happer are logically within the scope of the court order and of the quoted rules and regulations. Therefore, payment of their claims is proper.

▮ However the referral by Dr. Schoonmaker to Dr. Loveday was not a referral to a "specialist." Appellee so testified. Nor can the court order for services "exclusively" by Dr. Schoonmaker be interpreted to allow him to pass on the status of attending physician to whomsoever he pleases. The referral or transfer to Dr. Loveday was beyond that authorized by the order or by the quoted rules and regulations. Thus, the costs of such services must be borne by appellee himself.

The supplemental services originating through Dr. Loveday and objected to by appellant must be placed in the same category. These include the claim of Dr. Charles F. McMahon[3]; the claim of Hot Springs Memorial Hospital; the claim of Natrona County Memorial Hospital dated October 13, 1978 for $361.00; the claim of Casper Radiology Group, i. e. Dr. Ronald R. Lund dated October 16, 1978 for $16.00; and the claims of appellee for drug expenses dated December 4, 1978, December 6, 1978, and May 14, 1979 for $13.95, $37.50 and $166.53, respectively. The referrals to Dr. McMahon and Casper Radiology Group, i. e. Dr. Ronald R. Lund, and the prescriptions for drug expense were not by Dr. Schoonmaker, the physician in charge of the case, as required by the quoted rules and regulations. The change of hospitals was not with the consent of the district court as required by such rules and regulations.

Therefore, we affirm the order of the district court insofar as it applies to payment of the contested claims, except the claim of Dr. Glen L. Loveday, Jr.; the claim of Dr. Charles F. McMahon; the claim of Hot Springs County Memorial Hospital; the claim of Natrona County Memorial Hospital dated October 13, 1978 for $361.00; the claim of Casper Radiology Group, i. e. Dr. Ronald R. Lund, dated October 16, 1978 for $16.00; and the claims of appellee for drug expenses dated December 4, 1978, December 6, 1978, and May 14, 1979, for $13.95, $37.50 and $166.53, respectively. We reverse the order as to these excepted claims and remand the case with direction to disallow them as not proper for payment with worker's compensation funds.

---

3. There is sufficient evidence in the record to characterize Dr. McMahon as a "specialist."